FILED

2005 FEB -4  A 9: 53

U.S. DISTRICT COURT
BRIDGEPORT, CONN.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BROCK LESNAR,                          :     CIVIL ACTION NO.: 3:05CV 221
                                       :                      (CFD)
          Plaintiff,                   :
                                       :
V.                                     :
                                       :
WORLD WRESTLING ENTERTAINMENT, INC.,:
a Delaware corporation,                :
                                       :
          Defendant.                   :     FEBRUARY 3, 2005

## COMPLAINT

1.      The Plaintiff, Brock Lesnar, for his claims against the defendant, World Wrestling

Entertainment, Inc., states and alleges that:

## THE PARTIES

2.      The Plaintiff, Brock Lesnar ("Lesnar"), is an individual citizen and resident of the

state of Minnesota.

3.      The Defendant, World Wrestling Entertainment, Inc. ("WWE"), is, upon

information and belief, a Delaware corporation with its principal place of business at 1241 East

Main Street, Stamford, Connecticut.

## NATURE OF THE ACTION

4.      Pursuant to 28 U.S.C. §2201 *et seq*. (Declaratory Judgment Act), Lesnar seeks a declaration of the parties' respective rights and obligations under the terms of a Settlement Agreement and General Release of All Claims, specifically including the provisions thereof which purport to restrict his ability to work in the businesses of professional wrestling, "ultimate fighting" and/or "sports entertainment" in any capacity whatsoever through June 30, 2010, which provisions Lesnar asks the court to declare unenforceable in whole or in part.  Pursuant to 28 U.S.C. §2202 Lesnar further asks the court to award injunctive relief co-extensive with this court's declaration of rights as is necessary to prevent further and irreparable harm.

### JURISDICTION

5.      The court has jurisdiction of the subject matter pursuant to 28 U.S.C. §1332(a) in that the parties are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.      The court has personal jurisdiction of the defendant because it is a citizen of Connecticut and because the defendant has specifically consented and submitted to the jurisdiction of this court for the purposes of any suit, action or proceeding arising out of or relating to the subject matter hereof.

## VENUE

7.     Venue in the District of Connecticut is proper pursuant to 28 U.S.C. §§1391(a)(1) and (2) because the defendant resides, and Lesnar's cause of action arose in part from acts which took place in said District, under §1391(c) because defendant is a corporation that is subject to personal jurisdiction in this District, and because the defendant has specifically consented and submitted to venue in this district for the purposes of any suit, action or proceeding arising out of or relating to the subject matter hereof.

## FACTUAL STATEMENT

### WWE's BUSINESS

8.     WWE, formerly known and/or doing business as the World Wrestling Federation ("WWF") and World Wrestling Federation Entertainment, Inc. ("WWFE"), is a self-described integrated media and entertainment company principally engaged in the development, production and marketing of television programming and live events and the licensing and sale of branded consumer products.

9.     WWE's primary business includes the production and promotion of professional wrestling exhibitions and events for live audiences and for televised broadcast and/or cablecast, including pay-per-view cablecast events, and the licensing and sale of associated materials,

goods and merchandise, including but not limited to T-shirts, posters, photos, video tapes, video cassettes, video disks, dolls, books, biographies, articles and stories.

10.    The individuals who appear as wrestlers in WWE events and exhibitions are performing artists who portray fictional characters, and who put on "demonstrations of wrestling skills and abilities designed to provide athletic-styled entertainment to the public" within a scripted storyline.

11.    WWE's professional wrestling exhibitions and events constitute entertainment and are not competitive sports or contests, although WWE's professional wrestling performers generally do possess and exhibit tremendous athletic skill.

12.    WWE is currently the owner of the two dominant professional wrestling brands in the United States, WWE "Raw" and WWE "Smackdown."

13.    Within the United States, there are no other professional wrestling promotions which provide any meaningful competition to WWE in the production and promotion of professional wrestling exhibitions and events.

<strong>LESNAR'S BACKGROUND</strong>

14.    Lesnar began his career as an amateur wrestler at Bismarck State College, North Dakota, where he was a Junior College All-American in 1997 and 1998, and Junior College National Champion in 1998.

15.     In 1999 Lesnar transferred to the University of Minnesota, where he was Big Ten Champion in 1999 and 2000, NCAA Division I All-American in 1999 and 2000, NCAA Division I National Runner-Up in 1999, and NCAA Division I National Wrestling Champion, Heavyweight Division, in 2000.

### LESNAR'S 2000 WWFE "DEVELOPMENTAL" BOOKING CONTRACT

#### (Purpose and Scope of the Developmental Booking Contract)

16.     On or about June 9, 2000, WWE and Lesnar entered into a "World Wrestling Federation Entertainment, Inc. Booking Contract," pursuant to which Lesnar agreed to perform at, and WWE agreed to promote him in WWE's professional wrestling exhibitions and events. A true and correct copy of said June 9, 2000, WWFE Booking Contract is attached hereto marked Exhibit A, together with the related Loan Out Agreement entered into between WWE and Brock Lock, LLC attached hereto as Exhibit A-1, and incorporated herein by reference (the "Developmental Booking Contract").

17.     Pursuant to Sections 7.1(a), 7.11 and 9.3, the Developmental Booking Contract contemplated that Lesnar would train to be a professional wrestling performer with WWFE's affiliate, Ohio Valley Wrestling, a regional wrestling promotion based in Louisville, Kentucky, where he would attend WWE's "training camp," then progress to WWFE nationally televised exhibitions.

18.     Pursuant to Sections 6.1 and 6.3, the Developmental Booking Contract's term was ostensibly for a term of three years from its effective date of June 9, 2000.

(Lesnar Becomes WWE Champion While Under the Developmental Booking Contract)

19.     From June 9, 2000, to and including July 1, 2003, Lesnar trained and performed as agreed pursuant to the terms of the Developmental Booking Contract.

20.     From June 2000 to March 2002, Lesnar appeared and performed in Ohio Valley Wrestling's professional wrestling exhibitions and events as required by the Developmental Booking Contract.

21.     In March 2002, Lesnar appeared and performed for the first time on a WWE nationally televised professional wrestling program, and thereafter regularly appeared and performed in WWE live, televised, cable cast, and pay-per-view professional wrestling exhibitions and events.

22.     On August 25, 2002, WWE made Lesnar its World Heavyweight Champion in a pay-per-view cablecast event in which Lesnar's character defeated the character known as "The Rock."

23.     On March 30, 2003, WWE made Lesnar its World Heavyweight Champion for a second time in a pay-per-view cablecast event in which Lesnar's character defeated the character known as "Kurt Angle."

- 6 -

**(The Developmental Booking Contract's Limited Restrictions on Competition)**

24.     Pursuant to Section 12.2 of the Developmental Booking Contract, and only in the event Lesnar breached the agreement, he was prohibited: (i) for a period of one year; (ii) from working or performing in any capacity for "World Championship Wrestling," or any affiliated or subsidiary company thereof; or (iii) any other wrestling organization and/or entity owned or controlled by Turner Broadcasting System, Inc., Time-Warner, Inc. or any affiliated or subsidiary company thereof, including without limitation appearances in or at live events, pay-per-view or other televised events.

25.     Pursuant to the Developmental Booking Contract, which was in effect during the time that Lesnar was twice promoted by WWE as its World Heavyweight Champion and portrayed one of its most popular characters, the maximum term of any post-employment restriction on Lesnar's activities, under any circumstance, was for a period of one year after the termination of the Developmental Booking Contract, and Lesnar was then prohibited only from working for what was at the time WWE's primary competitor in the business of professional wrestling, World Championship Wrestling, then owned by Turner Broadcasting System, Inc. and Time-Warner, Inc.

26.    WWE has since acquired World Championship Wrestling's business and all related trademarks and intellectual property, and no longer has any meaningful competitors in the business of professional wrestling in North America.

## LESNAR'S 2003 WWE BOOKING CONTRACT

### (Purpose and Scope of the Booking Contract)

27.    On or about July 1, 2003, WWE and Lesnar entered into a World Wrestling Entertainment, Inc. Booking Contract that superseded and replaced the Developmental Booking Contract, pursuant to which Lesnar agreed to perform at, and WWE agreed to promote him in WWE's professional wrestling exhibitions and events.  A true and correct copy of said July 1, 2003, agreement, absent signatures appearing on the originals, is attached hereto marked Exhibit B and incorporated herein by reference (the "Booking Contract").

### (Lesnar Becomes WWE Champion Again While Under the Booking Contract)

28.    From July 1, 2003, to and including March 14, 2004, Lesnar performed as agreed pursuant to the terms of the Booking Contract.

29.    On September 16, 2003, WWE made Lesnar its World Heavyweight Champion for the third and final time in a pay-per-view cablecast event in which Lesnar's character again defeated the character known as "Kurt Angle."

30.     On March 14, 2004, Lesnar made his last professional wrestling performance for WWE in a pay-per-view cablecast event in which Lesnar's character was defeated by the character known as "Goldberg."

31.     At all times during his association with WWE, under the Developmental Booking Contract and Booking Contract, Lesnar was an artistic performer, and he was never asked, and never agreed to appear or participate in any form of true combat sport or true athletic contest for WWE, nor was Lesnar trained by WWE to participate in such activities.

**(The Booking Contract's Limited Restrictions on Competition)**

32.     Pursuant to Section 9.15 of the Booking Contract, Lesnar was prohibited "During the Term" only from working or performing in any capacity for any other "wrestling organization and/or entity not owned or controlled by [WWE]".

33.     Pursuant to Section 12.2 of the Booking Contract, and only in the event Lesnar breached the agreement, he was prohibited from: (i) working or performing in any capacity; (ii) in the United States; (iii) for any other wrestling organization and/or entity not owned or controlled by [WWE] or any affiliated or subsidiary company thereof, including without limitation appearances in live events, pay-per-view or other televised events; (iv) for one year from the date of termination of the agreement as a result of breach by Lesnar.

34.     Pursuant to the Booking Contract, which was in effect during the time that Lesnar was promoted by WWE as its World Heavyweight Champion and portrayed one of its most popular characters, the maximum term of any post-employment restriction on Lesnar's activities, under any circumstance, was for a period of one year after the termination of the Booking Contract in the event of a breach by Lesnar, and was otherwise limited to the term during which the Booking Contract remained in effect and for which time Lesnar was receiving guaranteed appearance fees of not less than $1 million per calendar year, and Lesnar was prohibited only from working for competing wrestling organizations in the United States.

### (Booking Contract Terminable at Will by WWE)

35.     Pursuant to Sections 6.1 and 6.3, the Booking Contract's term was ostensibly for a period of seven years from its effective date of July 1, 2003, or until June 30, 2010.

36.     Pursuant to Section 11.1 of the Booking Contract, however, WWE could terminate the Booking Contract with or without cause upon six months advance notice to Lesnar.

37.     The Booking Contract also contained a number of other provisions pursuant to which it could be terminated prior to the expiration of the ostensible seven-year term, to wit:

(a)     Pursuant to Section 10.2(b) of the Booking Contract, in the event Lesnar is injured and unable to wrestle for six consecutive months, WWE could terminate the Booking Contract;

(b)      Pursuant to Section 10.2(b) of the Booking Contract, in the event Lesnar is unable to wrestle for any reason other than injury, WWE could terminate the Booking Contract;

(c)      Pursuant to Section 11.1 of the Booking Contract, WWE and Lesnar could agree to an early termination of the Booking Contract by "a written instrument executed by each of the parties expressing their mutual consent to so terminate without any further liability on the part of the other;" and

(d)      Pursuant to Section 12.1 of the Booking Contract, WWE had the right, in its sole discretion, to terminate the agreement if Lesnar is habitually late or absent for appearances, fails any physical examination, or if his performance is unsatisfactory in WWE's sole discretion; and

(e)      Pursuant to Section 12.1 of the Booking Contract, WWE could terminate the Booking Contract in the event of Lesnar's Breach.

## THE SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS

### (Early Termination of the Booking Contract)

38.      On or before March 15, 2004, Lesnar requested pursuant to Section 11.1(b) of the Booking Contract that WWE consent to an Early Termination for the stated reason that he desired to try out for a roster spot on a National Football League team.

39.     At WWE's request and insistence, on or about April 2004, Lesnar and WWE entered into a Settlement Agreement and Release of All Claims pursuant to which an Early Termination of the Booking Contract was granted, effective March 15, 2004 (the "Settlement Agreement"). A true and correct copy of the Settlement Agreement, absent signatures appearing on the originals, is attached hereto marked Exhibit C and incorporated herein by reference.

### (Unreasonable and Unenforceable Restrictions on Competition/Penalty)

40.     Pursuant to Section 1 of the Settlement Agreement, the Booking Contract was terminated, except and other than the limited non-competition restrictions in Section 12.2 of the Booking Contract, which were expressly incorporated into the Settlement Agreement, and Section 7 of the Booking Contract, which requires WWE to continue paying Lesnar royalties for the exploitation of certain intellectual property.

41.     Section 4 of the Settlement Agreement is captioned "AFFIRMATION OF EXISTING OBLIGATIONS BY LESNAR," and was intended to correspond to Section 1 of the Settlement Agreement, which incorporates the limited non-competition restrictions in Section 12.2 of the Booking Contract.

42.     As set forth above in paragraph 33, the only post-termination restrictions on Lesnar's activities contained in Section 12.2 of the Booking Contract provide that, in the event of a termination of the Booking Contract triggered by Lesnar's breach, he shall not: (i) "work or

- 12 -

perform"; (ii) in any capacity; (iii) for any non-WWE "wrestling organization and/or entity"; (iv) "in the United States"; (v) for a period of one year.

43.     Under the caption, "AFFIRMATION OF EXISTING OBLIGATIONS BY LESNAR," however, Section 4(a) of the Settlement Agreement purports to substantially broaden the term, territory and scope of the limited non-competition restrictions in Section 12.2 of the Booking Contract, in that it provides in relevant part that Lesnar:

> ". . . shall not appear, participate and/or associate either directly or indirectly in any way throughout the world with any professional wrestling, ultimate fighting and/or sports entertainment companies, associations, joint ventures, sole proprietorships, and/or partnerships, other that the WWE, through the expiration date of the original Agreements of June 30, 2010."

44.     The term "ultimate fighting" is not defined in the Settlement Agreement.

45.     The term "sports entertainment companies" is not defined in the Settlement Agreement.

46.     The Settlement Agreement, in purpose and effect, penalizes Lesnar for requesting an early termination of the Booking Contract, in that the restrictions to which Lesnar was purportedly subject under Section 12.2 of the Booking Contract are unreasonably broadened and expanded: (i) from the territory of United States, to the entire world; (ii) from a maximum period of one year, to in excess of six years; (iii) from working for a professional wrestling organization or performing as a professional wrestler, to participating, directly or indirectly in any way with

not only professional wrestling organizations, but with undefined "ultimate fighting and/or sports entertainment companies" as well; and (iv) from being effective only if Lesnar breaches his agreement to be applicable irrespective of whether Lesnar has breached the Settlement Agreement.

### (Diligent Efforts to Succeed in the NFL)

47.    Subsequent to his release from the Booking Contract, Lesnar diligently pursued his desire to become a player in the National Football League, and obtained a tryout and attended training camp with the NFL's Minnesota Vikings.

48.    Despite Lesnar's diligent efforts, however, neither the Minnesota Vikings, nor any other NFL team, offered to sign him to a contract.

### (Lesnar's Services, though Valuable, Are Not Special, Unique or Irreplaceable)

49.    As of March 15, 2004, WWE had contracts with approximately 140 professional wrestling, in-ring performers.

50.    During the time that Lesnar was associated with WWE, it awarded the World Heavyweight Champion title no less than twenty-five times, to no less than fifteen different professional wrestling performers, including four Heavyweight Championship titles awarded to three different wrestling performers since March 14, 2004.

51.     In addition to the WWE World Heavyweight Championship, WWE has during the time Lesnar was associated with WWE and thereafter also awarded numerous other championship titles to numerous other professional wrestling performers, including but not limited to the WCW Championship, the Cruiserweight Championship, the Intercontinental Championship, the United States Championship, and Tag Team Championships.

52.     During the entire time Lesnar was performing under the Developmental Booking Contract and Booking Contract, and thereafter, WWE promoted all of its professional wrestling performers as "superstars," and WWE's professional wrestling events and promotions were never dependent upon the appearance or participation of any one individual wrestler, including Lesnar.

**(WWE has Abandoned Any Claim that Lesnar's Services are Irreplaceable)**

53.     From on or about October 2004, and thereafter, WWE has consistently advised Lesnar that it has no interest in retaining his services as a professional wrestler or otherwise.

54.     WWE has not promoted Lesnar as a professional wrestling performer since March 15, 2004.

## ACTUAL CONTROVERSY AND JURISDICTIONAL VALUE

55.     Since March 15, 2004, Lesnar has not worked or performed as a professional wrestler for WWE or any other organization or entity, and WWE has not paid Lesnar any performance fees.

56.     Since March 15, 2004, Lesnar has not engaged in any act or conduct prohibited by the literal terms of the Settlement Agreement.

57.     Lesnar now desires to work and earn a living in the only occupation for which he has been trained and which he knows, professional wrestling, and/or the occupation for which his physical gifts and training as an amateur wrestler make him particularly well suited, professional combat sports.

58.     As a professional athlete, Lesnar has only a limited window of opportunity during which his youth and physical conditioning allow him to maximize potential earnings, which window of opportunity may be shortened and/or entirely closed by illness or injury at any time.

59.     Lesnar is 27 years old and in the prime of his athletic career.  On June 30, 2010, when the purported restrictions on competition expire, Lesnar will be 33 years old, which for a professional athlete is an age at which many consider retirement due to the physical demands of their chosen occupation.

60.    WWE has recently threatened to enforce the purported restrictions on competition contained in the Settlement Agreement such that Lesnar may not work anywhere in the world, in any capacity, for any business or entity in the business of professional wrestling, "ultimate fighting" or "sports entertainment," to and including June 30, 2010, without fear of being sued for injunctive relief and damages.

61.    · As a direct result of WWE's stated interpretation of the Settlement Agreement and its threatened enforcement, Lesnar cannot pursue his chosen occupation anywhere in the world until June 30, 2010, resulting in lost income valued in excess of $1 million per year, and an actual case or controversy between Lesnar and WWE therefore exists, the value of which is in excess of this court's jurisdictional minimum threshold of $75,000.

## CHOICE OF LAW, FORUM AND JURISDICTION

62.    Pursuant to Section 15(a) of the Settlement Agreement, interpretation of the Settlement Agreement is governed by Connecticut Law.

63.    Pursuant to Section 15(a) of the Settlement Agreement, the United States District Court for the District of Connecticut is the exclusive forum in which a party may bring any dispute, claim or legal action arising directly or indirectly out of the Settlement Agreement.

64.    Pursuant to Section 15(a) of the Settlement Agreement, WWE consents to jurisdiction in Connecticut and waives personal service of process.

- 17 -

## CLAIMS FOR RELIEF

### COUNT I
### DECLARATORY RELIEF

65.    Lesnar restates and realleges the allegations in paragraphs 1 through 64 above as if fully set forth herein.

66.    A dispute has arisen between Lesnar and WWE concerning their respective rights, duties and liabilities to one another under the Settlement Agreement, including the enforceability of the purported restrictions on competition contained in said Agreement.

67.    Pursuant to 28 U.S.C. §2201 *et seq.* (Declaratory Judgment Act), Lesnar is entitled to a declaration that the purported restrictions on competition contained in the Settlement Agreement are unenforceable, in whole or in part, and/or declaring the parties' respective rights, duties and liabilities to one another.

68.    More specifically, Lesnar is entitled to a declaration that the Settlement Agreement's purported restrictions on competition are void and unenforceable, in their entirety, for any or all of the following, independent, alternative reasons:

(a)    The scope of the restrictions on competition contained in the Settlement Agreement, which purport to restrict Lesnar from: (i) appearing, (ii) participating, (iii) and/or associating, (iv) either directly or indirectly, (v) in any way, (vi) with any professional wrestling, (vii) ultimate fighting, (viii) and/or sports entertainment

- 18 -

companies, (ix) associations, (x) joint ventures, (xi) sole proprietorships, (xii) and/or partnerships, (xiii) other than the WWE, are not reasonably tailored to protect WWE's legitimate business interests, impose an excessive restraint on Lesnar's ability to earn a living, interfere with the public interest and are otherwise overly broad, unreasonable, oppressive, unfair and inequitable; and/or

(b)     The purported worldwide geographic restriction on competition contained in the Settlement Agreement is not reasonably tailored to protect WWE's legitimate business interests, imposes an excessive restraint on Lesnar's ability to earn a living, interferes with the public interest and is otherwise overly broad, unreasonable, oppressive, unfair and inequitable; and/or

(c)     The purported six-year duration of the restrictions on competition contained in the Settlement Agreement is not reasonably tailored to protect WWE's legitimate business interests, imposes an excessive restraint on Lesnar's ability to earn a living,  interferes with the public interest and is otherwise overly broad, unreasonable, oppressive, unfair and inequitable; and/or

(d)     The restrictions on competition contained in the Settlement Agreement are not reasonably tailored to protect WWE's legitimate business interests in that the terms "ultimate fighting" and "sports entertainment" are not defined, are ambiguous, fail to

provide fair notice of prohibited conduct and otherwise impose an excessive restraint on Lesnar's ability to earn a living, interfere with the public interest and are overly broad, unreasonable, oppressive, unfair and inequitable; and/or

(e)     The purported restrictions on competition contained in the Settlement Agreement, when read together and as a whole, and which absolutely prohibit Lesnar from pursuing his chosen occupation in any manner, anywhere in the world, for the prime years of his athletic career, are not reasonably tailored to protect WWE's legitimate business interests, impose an excessive restraint on Lesnar's ability to earn a living, interfere with the public interest and are overly broad, unreasonable, oppressive, unfair and inequitable; and/or

(f)     The purported restrictions on competition contained in the Settlement Agreement are void and unenforceable as a matter of law because they lack consideration and any purported consideration for such restrictions is illusory, in that the restrictions on competition to which Lesnar would have been bound had he breached the Booking Contract by refusing to appear and perform were far less onerous than those which WWE seeks to impose through the Settlement Agreement as "consideration" for granting an early termination of the Booking Contract; and/or

69.     Lesnar has no other adequate and speedy remedy at law, and a declaration of rights is necessary and proper for a resolution of the dispute.

## COUNT II
## INJUNCTIVE RELIEF

70.     Lesnar restates and realleges the allegations in paragraphs 1 through 69 above as if fully set forth herein.

71.     Pursuant to 28 U.S.C. §2201 (Declaratory Judgment Act), Lesnar is entitled to such further relief as may be appropriate based on the court's declaratory judgment including, but not limited to temporary and permanent injunctive relief enjoining and restraining WWE from attempting to enforce any provisions of the Settlement Agreement declared by this court to be unenforceable.

72.     Lesnar has no other adequate and speedy remedy at law, and injunctive relief co-extensive with this court's declaration of rights is necessary to prevent further and irreparable harm.

WHEREFORE, the Plaintiff, Brock Lesnar, prays that the court enter its Order declaring that the non-competition restrictions contained in the Settlement Agreement are not reasonably tailored to protect WWE's legitimate business interests, impose an excessive restraint on Lesnar's ability to earn a living, interfere with the public interest and are overly broad,

unreasonable, oppressive, unfair and inequitable, all of which independently render such non-competition restrictions unenforceable; granting injunctive relief co-extensive with such declaration of rights as is necessary to prevent further and irreparable harm; and granting all such further and other relief as may be just and equitable, including an award of Lesnar's costs, disbursements and attorneys' fees incurred herein.

Dated:  February 3, 2005.

THE PLAINTIFF,
BROCK LESNAR

By:

Scott S. Centrella/ ct05809
Diserio Martin O'Connor & Castiglioni LLP
One Atlantic Street
Stamford, Connecticut 06901
Tel: 203-358-0800
E-mail: scentrella@dmoc.com


David Bradley Olsen / 197944
220 South Sixth Street, Suite 1800
Minneapolis, Minnesota 55402
Tel: 612-339-2500
E-mail: dolsen@hensonefron.com

*Attorneys for the Plaintiff, Brock Lesnar*

H:\LJ7\SSC\23026.complaint.DOC

- 22 -