anything that is or shall be an offense or violation involving moral turpitude under Federal, state or local laws, or which brings WRESTLER into public disrepute, contempt, scandal or ridicule, or which insults or offends the community or any employee, agent or affiliate of PROMOTER or which injures WRESTLER's reputation in PROMOTER's sole judgment, or diminishes the value of WRESTLER's professional wrestling services to the public or PROMOTER, then at the time of any such act, or any time after PROMOTER learns of any such act, PROMOTER shall have the right to fine WRESTLER in an amount to be determined by PROMOTER; and PROMOTER shall have the right to suspend and/or terminate this Agreement forthwith.

9.15   During the Term, WRESTLER acknowledges and agrees that he shall not work or perform in any capacity for any other wrestling organization and/or entity not owned or controlled by PROMOTER or any affiliated or subsidiary company thereof, including without limitation appearances in live events, pay-per-view or other televised events.

## 10. WARRANTY

10.1   WRESTLER represents, warrants, and agrees that WRESTLER is free to enter into this Agreement and to grant the rights and licenses herein granted to PROMOTER; WRESTLER has not heretofore entered and shall not hereafter enter into any contract or agreement which is in conflict with the provisions hereof or which would or might interfere with the full and complete performance by WRESTLER of his obligations hereunder or the free and unimpaired exercise by PROMOTER of any of the rights and licenses herein granted to it; WRESTLER further represents and warrants there are no prior or pending claims, administrative proceedings, civil lawsuits, criminal prosecutions or other litigation matters, including without limitation any immigration or athletic commission related matters, affecting WRESTLER which would or might interfere with PROMOTER's full and complete exercise or enjoyment of any rights or licenses granted hereunder. Any exceptions to this Warranty are set forth in Schedule B, attached hereto.

10.2   (a)   WRESTLER represents, warrants and agrees that WRESTLER is in sound mental and physical condition; that WRESTLER is suffering from no disabilities that would impair or adversely affect WRESTLER's ability to perform professional wrestling services; and that WRESTLER is free from the influence of illegal drugs or controlled substances, which can threaten WRESTLER's well being and pose a risk of injury to WRESTLER or others. To insure compliance with this warranty, WRESTLER shall abide by PROMOTER's drug policy for wrestlers, as conveyed to WRESTLER and/or his representative, as well as any and all amendments, additions, or modifications to the PROMOTER's drug policy implemented during the Term of this Agreement and consents to the sampling and testing of his urine in accordance with such Policy. In addition, WRESTLER agrees to submit annually to a complete physical examination by a physician either selected or approved by PROMOTER.

(b)   In the event that WRESTLER is unable to wrestle for six (6) consecutive months during the Term of this Agreement due to an injury suffered in the ring while performing services at PROMOTER's direction, PROMOTER shall have the right to thereafter terminate this Agreement or suspend WRESTLER without pay. If WRESTLER is unable to wrestle for any other reason during the Term of this Agreement, PROMOTER shall have the right to immediately terminate this Agreement or suspend WRESTLER without pay. PROMOTER can opt in its discretion to extend

16

the Term of this Agreement for a period of time equal to the period of suspension or any portion thereof. Upon certification by WRESTLER or PROMOTER's physician during any period of suspension that WRESTLER is fully recovered and capable of performing all services as required under this Agreement, PROMOTER can reinstate the Agreement, and it will therefore continue to be of full force and effect throughout the remainder of the Initial Term of this Agreement and any Renewal Term thereof.

10.3   PROMOTER reserves the right to have WRESTLER examined by a physician of its own choosing at its expense at any point during the Term of this Agreement.

10.4   WRESTLER further represents, warrants and agrees that this Agreement supersedes all prior agreements between WRESTLER and PROMOTER, whether written or oral, and that he has been fully compensated, where applicable, under such prior agreement(s) including without limitation a certain booking contract dated June 7, 2000 and made effective on June 9, 2000, and as thereafter amended between the parties with the exception of merchandising revenue or royalties or any pay-per-view or live event payments which are accrued but not yet due to be paid.

## 11. EARLY TERMINATION

11.1   (a) This Agreement may be terminated by PROMOTER during the Term for any reason whatsoever by providing WRESTLER six (6) months advance written notice of said termination.

(b) This Agreement may also be terminated prior to the end of its Term by a written instrument executed by each of the parties expressing their mutual consent to so terminate without any further liability on the part of either.

(c) In the event of such early termination, PROMOTER shall pay WRESTLER for all uses of the Intellectual Property in accordance with paragraphs 7.3, 7.4, 7.5 and 7.6.

11.2   This Agreement will be terminated by WRESTLER's death during the Term, with no further compensation due WRESTLER's heirs, successors, personal representatives or assigns.

11.3   Upon the termination of this Agreement for any reason, including breach, the parties acknowledge and agree that PROMOTER shall own all right, title and interest in all Works, New Intellectual Property and any registrations thereof and PROMOTER shall have the exclusive right to sell or otherwise dispose of any materials, goods, merchandise or other items (i) produced during the Term of this Agreement incorporating any Original Intellectual Property, and (ii) produced incorporating New Intellectual Property, in perpetuity.

## 12. BREACH

12.1   In addition to those reasons set forth elsewhere in this Agreement, PROMOTER shall have the right, in its sole discretion, to immediately suspend or terminate the operation of this Agreement, both as to services and compensation, if any of the following occurs:

(a)   WRESTLER violates PROMOTER's drug policy as conveyed to WRESTLER

17

and/or his representative or fails PROMOTER's pre-contract drug screening;

(b) WRESTLER is habitually late and/or absent for scheduled Events or appearances as PROMOTER determines in its sole discretion;

(c) WRESTLER fails any physical examination conducted on behalf of PROMOTER, as required herein;

(d) WRESTLER fails to maintain physical condition or training such that his weight, and/or his performance is unsatisfactory as determined by PROMOTER in its sole discretion; or

(e) PROMOTER is unable to obtain any necessary athletic commission licenses or immigration clearances for WRESTLER.

12.2 In the event WRESTLER breaches this Agreement, PROMOTER may recover such actual direct damages as may be established in a court of law, as provided in Paragraph 13.8. In addition, in the event of termination pursuant to this Paragraph, WRESTLER shall forfeit any future payments due pursuant to paragraph 7 and WRESTLER shall not appear under, use, refer to or exploit in any manner, parenthetically or otherwise, the Original Intellectual Property for the remainder of the Term and the New Intellectual Property forever. Further, at PROMOTER's sole option, the Term of this Agreement may be extended by the term of any suspension period, in whole or in part, with all other terms and conditions hereof remaining in full force and effect during such extended period. In the event WRESTLER breaches this Agreement, WRESTLER acknowledges and agrees that he shall not work or perform in any capacity in the United States for any other wrestling organization and/or entity not owned or controlled by PROMOTER or any affiliated or subsidiary company thereof, including without limitation appearances in live events, pay-per-view or other televised events, for one (1) year from the date of the termination of this Agreement as a result of breach of this Agreement by WRESTLER.

12.3 The parties further agree that because of the special, unique, and extraordinary nature of the obligations of PROMOTER and WRESTLER respecting all rights and licenses concerning bookings, promoting, Programs, Events, Intellectual Property, which are the subject matter of this Agreement, WRESTLER's breach of this Agreement shall cause PROMOTER irreparable injury which cannot be adequately measured by monetary relief; as a consequence PROMOTER shall be entitled to injunctive and other equitable relief against WRESTLER to prevent WRESTLER's breach or default hereunder and such injunction or equitable relief shall be without prejudice to any other rights, remedies or damages which PROMOTER is legally entitled to obtain.

12.4 In no circumstances, whatsoever, shall either party to this Agreement be liable to the other party for any punitive or exemplary damages; and all such damages, whether arising out of the breach of this Agreement or otherwise, are expressly waived.

## 13. MISCELLANEOUS

13.1 Nothing contained in this Agreement shall be construed to constitute WRESTLER as an employee, partner or joint venturer of PROMOTER, nor shall WRESTLER have any authority to

bind PROMOTER in any respect. WRESTLER is an independent contractor and WRESTLER shall execute and hereby irrevocably appoints PROMOTER attorney-in-fact to execute, if WRESTLER refuses to do so, any instruments necessary to accomplish or confirm the foregoing or any and all of the rights granted to PROMOTER herein.

13.2   This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and all prior understandings, negotiations and agreements are merged in this Agreement. including without limitation that certain Booking Contract between PROMOTER and WRESTLER dated June 7, 2000 and made effective on June 9, 2000, as amended. There are no other agreements, representations, or warranties not set forth herein with respect to the subject matter hereof; and the parties expressly acknowledge that any representation, promise or inducement by any party to any other party that is not embodied in this Agreement is not part of this Agreement, and they agree that no party shall be bound by or liable for any such alleged representation, promise or inducement not set forth herein.

13.3   This Agreement may not be changed or altered except in writing signed by PROMOTER and WRESTLER.

13.4   If any provision or clause of this Agreement, or portion thereof, shall be held by any court or other tribunal of competent jurisdiction to be illegal, invalid, or unenforceable in such jurisdiction, the remainder of such provision shall not thereby be affected and shall be given full effect, without regard to the invalid portion. It is the intention of the parties that, if any court construes any provision or clause of this Agreement, or any portion thereof, to be illegal, void or unenforceable because of the duration of such provision or the area or matter covered thereby, such court shall reduce or modify the duration, area, or matter of such provision, and, in its reduced or modified form, such provision shall then be enforceable and shall be enforced.

13.5   PROMOTER shall have the right to assign, license, or transfer any or all of the rights granted to and hereunder to any person, firm or corporation, provided that such assignee has the financial ability to meet the Promoter's obligations hereunder, and if any assignee shall assume in writing PROMOTER's obligations hereunder, PROMOTER shall have no further obligations to WRESTLER. WRESTLER may not assign, transfer or delegate his rights or obligations hereunder and any attempt to do so shall be void.

13.6   Any notices required or desired hereunder shall be in writing and sent postage prepaid by certified mail, return receipt requested, or by prepaid telegram addressed as follows, or as the parties may hereafter in writing otherwise designate:

| To PROMOTER: | To WRESTLER: |
|---|---|
| World Wrestling Entertainment, Inc. | Brock Lesnar |
| Attn:   Edward L. Kaufman | 593 3rd Street SW |
| Senior Vice President and General Counsel | Delano, MN  55328 |
| 1241 E. Main Street | |
| Stamford, CT  06902 | |

The date of mailing shall be deemed to constitute the date of service of any such notice by

PROMOTER. The date of receipt shall be deemed to constitute the date of service of any such notice by WRESTLER.

13.7  This Agreement is made in Connecticut and shall be governed by and interpreted in accordance with the laws of the State of Connecticut, exclusive of its provisions relating to conflicts of law.

13.8  In the event there is any claim, dispute, or other matter in question arising out of or relating to this Agreement, the enforcement of any provisions therein, or breach of any provision thereof, it shall be submitted to the Federal, state or local courts, as appropriate, only in the State of Connecticut. This provision to submit all claims, disputes or matters in question to the Federal or state courts in the State of Connecticut shall be specifically enforceable; and each party, hereby waiving personal service of process and venue, consents to jurisdiction in Connecticut for purposes of any other party seeking or securing any legal and/or equitable relief.

13.9  In no circumstances, whatsoever, shall either party to this Agreement be liable to the other party for any punitive or exemplary damages; and all such damages, whether arising out of the breach of this Agreement or otherwise, are expressly waived.

## 14. CONFIDENTIALITY

14.1  (a) Other than as may be required by applicable law, government order or regulations, or by order or decree of the Court, WRESTLER hereby acknowledges and agrees that in further consideration of PROMOTER's entering into this Agreement, and continued Agreement, WRESTLER shall not, at any time during this Agreement, or after the termination of this Agreement for any reason whatsoever, disclose to any person, organization, or publication, or utilize for the benefit or profit of WRESTLER or any other person or organization, any sensitive or otherwise confidential business information, idea, proposal, secret, or any proprietary information obtained while with PROMOTER and/or regarding PROMOTER, its employees, independent contractors, agents, officers, directors, subsidiaries, affiliates, divisions, representatives, or assigns. Included in the foregoing, by way of illustration only and not limitation, are such items as reports, business plans, sales information, cost or pricing information, lists of suppliers or customers, talent lists, story lines, scripts, story boards or ideas, routines, gags, costumes or parts of costumes, accessories, crowns, inventions, championship, title or other belts (if applicable) and any other tangible or intangible materials written, composed, submitted, added, improvised, or created by or for WRESTLER in connection with appearances in the Programs, information regarding any contractual relationships maintained by PROMOTER and/or the terms thereof, and/or any and all information regarding wrestlers engaged by PROMOTER.

(b) Notwithstanding the foregoing, WRESTLER's obligation of confidentiality shall not include information which:

(i) at the time of disclosure was in the public domain;

(ii) after such disclosure, becomes generally available to the public other than through any act or omission by WRESTLER; and

20

        (iii) is required to be disclosed by any court of competent jurisdiction, provided that prior written notice of such disclosure is furnished to PROMOTER in a timely manner in order to afford PROMOTER an opportunity to seek a protective order against such disclosure.

14.2    WRESTLER acknowledges and agrees that its agreement to be bound by the terms hereof is a material condition of PROMOTER's willingness to use and continue to use WRESTLER's services. Other than as may be required by applicable law, government order or regulation; or by order or decree of the court, the parties agree that neither of them shall publicly divulge or announce, or in any manner disclose, to any third party, any of the specific terms and conditions of this Agreement; and both parties warrant and covenant to one another that none of their officers, directors, employees or agents will do so either. Notwithstanding the foregoing, WRESTLER shall be free to disclose the terms and conditions of this Agreement to his lawyers, agents, financial advisers and spouse and PROMOTER shall be free to disclose the terms and conditions of this Agreement to its lawyers, accountants and to those employees who have a legitimate need to know such information.

14.3    This Agreement any amendments thereto may be executed in counterparts, each of which shall be deemed to be an original and all of which taken together shall be deemed to constitute the same instrument. Counterparts may be executed either in original or faxed form and the parties adopt any signatures received by a receiving fax machine as original signatures of the parties.

        All of the terms and conditions of any Addenda or Schedules are incorporated herein by reference and made a part hereof.

IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year written below.

| WORLD WRESTLING ENTERTAINMENT, INC. ("PROMOTER") | BROCK LESNAR ("WRESTLER") |
|---|---|
| By: *James Ross* | By: *Brock Lesnar* |
| James Ross | |
| Its: Senior Vice President Talent Relations & Wrestling Administration | |
| Date: 6/26/03 | Date: _____ |

21

STATE OF CONNECTICUT            )
                                ) ss: Stamford
COUNTY OF FAIRFIELD             )

On ___June 24,___ 2003 before me personally came James Ross, Senior Vice President of Talent Relations & Wrestling Administration., to me known, and known to me to be the individual described in, and who executed the foregoing, and duly acknowledged to me that he is a duly authorized corporate officer of World Wrestling Entertainment, Inc., and that he executed the same on behalf of said Company.

WITNESS my hand and notarial seal this 24th day of ___June___, 2003.

_Margaret M. Ytuarte_
Notary Public

My commission expires: __7-31-07__

MARGARET M. YTUARTE
NOTARY PUBLIC
MY COMMISSION EXPIRES JULY 31, 2007

STATE OF _Connecticut_        )
                              ) ss: _Stamford_
COUNTY OF _Fairfield_         )

I am a Notary Public for said County and State, do hereby certify that Brock Lesnar personally appeared before me this day and acknowledged the due execution of the foregoing instrument to be his free act and deed for the purposes therein expressed.

WITNESS my hand and notarial seal this 24th day of ___June___, 2003.

_Elizabeth M. DiFabio_
Notary Public

My commission expires: _____

ELIZABETH M. DIFABIO
NOTARY PUBLIC
MY COMMISSION EXPIRES AUG. 31, 2004

22

## SCHEDULE A
## ORIGINAL INTELLECTUAL PROPERTY

BROCK LESNAR
BROCK

# SCHEDULE B
## EXCEPTIONS TO WARRANTY
### PENDING CONTRACTS/CLAIMS/LITIGATION WHICH MAY INTERFERE OR CONFLICT WITH WRESTLER'S PERFORMANCE AND/OR GRANT OF RIGHTS

## Exhibit "B"

## INDEPENDENT CONTRACTOR CERTIFICATION

I, Brock Lesnar, on behalf of Brock Lock, LLC ("Lender"), hereby certify that:

Lender's relation to World Wrestling Entertainment, Inc. and its various parent, subsidiary and affiliate corporations and successors thereto ("Promoter"), shall be that of an independent contractor and not an employee of Promoter for any purpose whatsoever. Lender shall have sole control of the manner and means of performing its work, and Promoter is interested only in the results Lender obtains. Lender does not have, nor shall Lender hold itself out as having, any right, power or authority to create any contract or obligation, either express or implied; on behalf of, in the name of, or binding upon Promoter, its parent, subsidiary or affiliate companies or successors thereto, unless Promoter or any of the foregoing companies shall consent thereto in writing. By virtue of Lender's status as an "independent contractor," Lender agrees that Lender alone shall be responsible for the payment of and shall pay any and all taxes, insurance and like sums levied or assessed with respect to the compensation paid to Lender and/or assessed under existing local, state or federal law, including but not limited to social security, unemployment, workers' compensation and disability insurance. Lender acknowledges that Promoter will make no deductions therefor from such compensation payments; provided, however, nothing contained herein shall be construed so as to prevent Promoter from withholding, deducting, reducing or limiting compensation by Promoter which is required or authorized by law. Similarly, by virtue of Lender's independent contractor status, Lender hereby acknowledges that Lender will not be entitled to receive from Promoter any benefits whatsoever that may be generally available to the employees of Promoter. Lender irrevocably and expressly waives any claim, right or entitlement to receive any and all such benefits. Lender agrees to defend and hold Promoter harmless from and against any and all claims arising from Lender's failure to properly discharge the foregoing obligations.

AGREED AND ACCEPTED:

BROCK LOCK, LLC  
("Lender")

By: _____  
Brock Lesnar  
Its: President

Date: _____

WORLD WRESTLING ENTERTAINMENT, INC.  
("Promoter")

By: _____  
James Ross  
Senior Vice President of Talent Relations  
and Wrestling Administration

Date: 6/26/03

Exhibit "C"

LETTER OF INDUCEMENT

As an inducement to World Wrestling Entertainment, Inc. ("Promoter") to enter into the foregoing Loan Out Agreement ("Agreement") dated and made effective as of July 1, 2003, with Brock Lock, LLC ("Lender") and as a material part of the consideration inducing Promoter to do so, and in consideration for the benefits I shall derive therefrom, I hereby represent, warrant and agree as follows:

1. I am familiar with each and all of the terms, covenants and conditions of the Agreement and consent and agree to the execution and delivery thereof by Lender; I shall render all services, grant all rights and perform all other obligations to be performed by me as provided for in the Agreement including without limitation, those set forth in that certain Talent Booking Contract dated and made effective on July 1, 2003 attached as Exhibit A hereto ("Booking Agreement"); and Promoter shall have all rights, privileges and remedies granted to Promoter thereunder.

2. I shall comply with all of the terms, covenants and conditions of the Agreement on my part to be complied with including without limitation, those set forth in the Booking Agreement; I hereby join in the representations, warranties, agreements and indemnities made by Lender as though I were a party thereto; and I am under no obligation or disability created by law or otherwise which would or might prevent or restrict me from so doing.

3. I shall look solely to Lender for all compensation to be paid to me for all services and obligations to be performed by me and all rights, licenses and privileges to be granted by me, and I waive any claim against Promoter for wages, salary or other compensation or any kind for any services which I may render pursuant to the Agreement and Booking Agreement; provided, however, in the event Promoter exercises its right to substitute me in accordance with Paragraph 5 below as a direct party to the Agreement in the place and stead of Lender, Promoter shall pay the compensation specified in the Booking Agreement directly to me, provided that I deliver a release signed by Lender in a form satisfactory to Promoter waiving all claims by Lender to the compensation specified in the Agreement, and provided further that Promoter shall have the right to offset against the compensation otherwise payable to me the amount of any damages or expenses arising out of or relating to any breach of Lender's undertakings or indemnities pursuant to this Agreement.

4. In no event shall any amendment or termination of the agreement which I now have or any agreement which I may hereafter have with Lender, pursuant to which Lender may provide my services, or any breach of any such agreement by Lender, limit or affect any of my obligations or any of the rights, privileges or remedies of Promoter provided for in the Agreement including without limitation, those set forth in the Booking Agreement; and, in the event of any such breach, I agree that I shall look solely to Lender for any remedies arising out of such breach or failure to perform, and I expressly agree that I shall continue to perform all

services and obligations to be performed by me under the Agreement including without limitation, those set forth in the Booking Agreement; and Promoter shall continue to have all rights, privileges and remedies specified therein.

5. If Lender or its successors should be dissolved or should otherwise cease to be able, for any reason whatsoever, to perform and observe each and all of the terms and conditions of the Agreement, I shall, at the election of Promoter, be deemed to be substituted as a direct party to the Agreement in the place and stead of Lender, and I shall be deemed to be engaged directly by Promoter for the balance of the term of the Agreement upon all of the terms and conditions as set forth therein; in the event of a breach or threatened breach of the Agreement and/or Booking Agreement by Lender or by me, Promoter shall be entitled to seek legal and equitable relief by way of injunction or otherwise against Lender and/or me without the necessity of first resorting to or exhausting any rights or remedies which Promoter may have against Lender. All of the foregoing shall be to the same extent and with the same force and effect as though I was a direct party to the Agreement, and I acknowledge for this purpose that the rights granted to Promoter and my services thereunder are of a special, unique, unusual and extraordinary and intellectual character giving them peculiar value, the loss of which cannot be reasonably or adequately compensated in damages.

6. I agree that written notices to Lender shall constitute notice to the undersigned as well.

_____
Brock Lesnar