UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BROCK LESNAR, | ) | CIVIL ACTION NO: |
| | ) | 3:05cv221 (CFD) |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| WORLD WRESTLING | ) | |
| ENTERTAINMENT, INC. | ) | |
| | ) | |
| Defendant. | ) | MAY 27, 2005 |

**REPORT OF PARTIES' PLANNING MEETING**

Date Original Complaint Filed:

February 4, 2005.

Date Complaint Served:

February 10, 2005.

Date of Defendant's Appearance:

February 14, 2005.

Pursuant to Fed. R. Civ. P. 16(b), 26(f) and D. Conn. L. Civ. R. 16, counsel for the parties set forth below have conferred regarding scheduling matters:

Scott S. Centrella, for the Plaintiff, BROCK LESNAR.

Daniel L. Schwartz, for the Defendant/Counterclaimant, WORLD WRESTLING ENTERTAINMENT, INC.

I.  **CERTIFICATION**

Undersigned counsel certify that, after consultation with their clients, they have discussed the nature and basis of the parties' claims and defenses and any possibilities for achieving a

71287942_2.DOC

prompt settlement or other resolution of the case and, in consultation with their clients, have developed the following proposed case management plan. Counsel further certify that they have forwarded a copy of this report to their clients.

## II.     JURISDICTION

### A.     Subject Matter Jurisdiction

This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332. Jurisdiction exists because the parties are citizens of different states (the Plaintiff is an individual citizen and resident of the state of Minnesota and the Defendant is a Delaware corporation with a principal place of business in Connecticut) and the amount in controversy, exclusive of costs and interest, exceeds the sum or value of $75,000.00.

### B.     Personal Jurisdiction

Personal jurisdiction is not contested.

## III.    BRIEF DESCRIPTION OF CASE

### A.     Claims of the Plaintiff

The plaintiff, Brock Lesnar ("Lesnar"), seeks a declaration pursuant to 28 U.S.C. § 2201, *et seq*. (Declaratory Judgment Act), that a non-competition agreement (the "Agreement") which purports to restrict his ability to work in or be associated with the businesses of "professional wrestling," "ultimate fighting" and/or "sports entertainment" in any capacity whatsoever anywhere in the world through June 30, 2010, is void and unenforceable as a matter of law. Pursuant to 28 U.S.C. § 2202 Lesnar also seeks injunctive relief coextensive with the Court's declaration of rights as may be necessary to prevent further irreparable harm.

From June 2000 through March 15, 2004, Lesnar, a world-class athlete, worked as a professional wrestler for defendant World Wrestling Entertainment, Inc. ("WWE"), an

entertainment company whose primary business includes the production and promotion of professional wrestling exhibitions and events. The two "Booking Contracts" that were in effect during Lesnar's association with WWE each contained limited post-contractual restrictions on competition, triggered only by Lesnar's breach of contract. The first Booking Contract, in effect through June 30, 2003, restricted Lesnar in the event of his breach only from working for WWE's then primary competitor in the professional wrestling business for a period of one year. The second Booking Contract, in effect through March 15, 2004, restricted Lesnar in the event of a breach only from working for another wrestling organization in the United States for a period of one year. Each of the Booking Contracts were terminable at will by WWE.

In March 2004 Lesnar asked WWE to consent to an early termination of the second Booking Contract for the reason that he desired to try out for a roster spot on a National Football League team. WWE agreed, and drafted a Settlement Agreement and General Release of All Claims which it asked Lesnar to sign. That Agreement expanded the limited post-contractual restrictions on competition: (i) from the territory of United States, to the entire world; (ii) from a maximum period of one year, to in excess of six years; and (iii) from working for a professional wrestling organization or performing as a professional wrestler, to participating, directly or indirectly in any way with not only professional wrestling organizations, but also with undefined "ultimate fighting and/or sports entertainment companies." Lesnar alleges that the purported restrictions on competition are unenforceable under Connecticut law because they are not reasonably tailored to "fairly" protect WWE's legitimate business interests, impose an excessive and unreasonable restraint on Lesnar's ability to earn a living, and are otherwise overly broad, oppressive, unfair and inequitable.

B.     Defenses and Counterclaims of WWE

As a preliminary matter, Defendant/Counterclaimant WWE objects to and does not agree with Plaintiff's characterization of his claims and statement of the case above.

WWE seeks to enforce the provisions of the Settlement Agreement and General Release of All Claims (the "Settlement Agreement") which was freely and voluntarily entered into by both parties and represented a negotiated resolution of potential litigation over Lesnar's refusal to perform his 2003 booking contract with WWE. In order to enforce the provisions of the Settlement Agreement, WWE seeks an order temporarily and permanently enjoining and preventing Lesnar from breaching the provisions of the Settlement Agreement in the future. WWE also seeks a declaration that Lesnar has breached the Settlement Agreement in a fashion entitling WWE to withhold monies otherwise payable to Lesnar under the Settlement Agreement.

On or about July 1, 2003, WWE and Lesnar entered into a World Wrestling Entertainment, Inc. Booking Contract (the "2003 Booking Contract"). Pursuant to the 2003 Booking Contract, Lesnar agreed, *inter alia*, to perform exclusively at WWE wrestling exhibitions and events, as well as other events, engagements, or entertainment programs through June 30, 2010. Further, the 2003 Booking Contract provided that all rights granted by Lesnar were exclusive to WWE even to the exclusion of Lesnar. Lesnar's promise of exclusivity to WWE was worldwide.

Prior to March 14, 2004, Lesnar informed WWE that he no longer intended to perform his contractual obligations after "Wrestlemania XX," WWE's premier event, scheduled for March 14, 2004, thereby breaching and repudiating his obligations under the 2003 Booking Contract. At the same time, Lesnar requested an early release from certain of his contractual

obligations in order to pursue a career in professional football. In that regard, Lesnar specifically represented that his request to be released from certain of his obligations under the 2003 Booking Contract was not being done in order to pursue wrestling or other forms of sports entertainment opportunities in any form elsewhere, but instead was done solely to pursue a professional football career. In specific reliance on these material representations by Lesnar and as a means of settling and avoiding potential litigation, WWE consented to Lesnar's early release from the 2003 Booking Contract based on the representations and promises of Lesnar. To that end, on May 6, 2004, WWE and Lesnar entered into the Settlement Agreement, effective March 15, 2004. In exchange for Lesnar's promise to abide by the exclusivity obligations of the 2003 Booking Contract through June 30, 2010, WWE agreed to release Lesnar from certain obligations of the 2003 Booking Contract as well as pay Lesnar certain royalties pursuant to the 2003 Booking Contract to which he was otherwise not entitled because of his breach of the 2003 Booking Contract.

In short, by signing the Settlement Agreement, Lesnar agreed to abide by the exclusivity obligations of his 2003 Booking Contract if WWE agreed to release him to try his hand at a professional football career and pay him royalties it was otherwise not obligated to pay him due to his refusal to perform under the 2003 Booking Contract.

On or about January 4, 2005, Lesnar disregarded and breached the exclusivity obligations contained in the Settlement Agreement. Specifically, in a planned event, Lesnar appeared ringside at a New Japan Pro Wrestling ("New Japan") event and broadcast and was introduced to the crowd in attendance. Further, Lesnar, in an effort to explore a future contractual and working relationship with New Japan, has attended meetings and negotiations with New Japan. As a

result of Lesnar's appearance, association, meetings and negotiations with New Japan, Lesnar is in breach of the exclusivity obligations contained in the Settlement Agreement.

WWE has fully complied with all provisions of the Settlement Agreement. Specifically, WWE has permitted Lesnar to pursue a career in professional football and has paid Lesnar approximately $125,000 in royalties.

WWE contends that the provisions contained in the Settlement Agreement are a negotiated resolution of potential litigation over Lesnar's breach of the 2003 Booking Contract. By the terms of the Settlement Agreement, Lesnar did no more than agree to continue to abide by the exclusivity terms of the 2003 Booking Contract through June 30, 2010. Further, the terms of the Settlement Agreement are valid and enforceable, and Lesnar's actions related to New Japan are in breach of the Settlement Agreement. Accordingly, Lesnar is no longer entitled to royalties pursuant to the Settlement Agreement and should be temporarily and permanently enjoined from breaching the provisions of the Settlement Agreement in the future.

## IV.   STATEMENT OF UNDISPUTED FACTS

Counsel certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute. The parties state that the following material facts are undisputed:

1. WWE, formerly known and/or doing business as the World Wrestling Federation ("WWF") and World Wrestling Federation Entertainment, Inc. ("WWFE"), is an integrated media and entertainment company principally engaged in the development, production and marketing of television programming and live events and the licensing and sale of branded consumer products.

2.  WWE's primary business includes the production and promotion of professional wrestling exhibitions and events for live audiences and for televised broadcast and/or cable cast, including pay-per-view cable cast events, and the licensing and sale of associated materials, goods and merchandise, including but not limited to T-shirts, posters, photos, video tapes, video cassettes, video disks, dolls, books, biographies, articles and stories.

3.  The individuals who appear as wrestlers in WWE events and exhibitions are performing artists who portray fictional characters, and who put on "demonstrations of wrestling skills and abilities designed to provide athletic-styled entertainment to the public" within a scripted storyline.

4.  WWE's professional wrestling exhibitions and events constitute entertainment and are not intended to be competitive sports or contests, although WWE's professional wrestling performers generally do possess and exhibit athletic skill.

5.  WWE is currently the owner of two professional wrestling brands, WWE "RAW" and WWE "SmackDown!"

6.  Lesnar began his collegiate career as an amateur wrestler at Bismarck State College, North Dakota, where he was a Junior College All-American in 1997 and 1998 and a Junior College National Champion in 1998. In 1999, Lesnar transferred to the University of Minnesota, where he was Big Ten Champion in 1999 and 2000, NCAA Division I All-American in 1999 and 2000, NCAA Division I National Runner-Up in 1999, and NCAA Division I National Wrestling Champion, Heavyweight Division, in 2000.

7.  On or about June 9, 2000, WWE and Lesnar entered into a three-year "World Wrestling Federation Entertainment, Inc. Booking Contract."

8. On or about July 1, 2003, WWE and Lesnar entered into a new World Wrestling Entertainment, Inc. Booking Contract.

9. From July 1, 2003, through March 14, 2004, Lesnar continued to perform as a professional wrestler for WWE.

10. On March 14, 2004, Lesnar made his last professional wrestling performance for WWE in a pay-per-view cablecast event in which Lesnar's character lost to the character known as "Goldberg."

11. On May 6, 2004, Lesnar and WWE entered into a Settlement Agreement and General Release of All Claims, effective March 15, 2004.

12. WWE has not promoted Lesnar as a professional wrestling performer since March 15, 2004.

13. Since March 15, 2004, Lesnar has not worked or performed as a professional wrestler for WWE and WWE has not paid Lesnar any performance fees.

14. WWE has paid Lesnar approximately $125,000 in royalties since March 15, 2004.

15. On or about January 4, 2005 Lesnar attended a professional wrestling event at the Tokyo Dome in Tokyo, Japan, produced by New Japan Pro Wrestling ("New Japan").

16. While attending the New Japan Event on January 4, 2005, Lesnar was introduced to the crowd in attendance.

17. Lesnar has explored business opportunities with New Japan, and other undeclared entities, concerning the possibility of working with and performing for such organizations.