UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Brock Lesnar,

        Plaintiff,

v.

World Wrestling Entertainment, Inc.,
a Delaware corporation,

        Defendant.

Civil File No. 3: 05 CV 221 (CFD)
(District of Connecticut)

---

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO QUASH OR MODIFY SUBPOENA ISSUED TO ATTORNEY DAVID BRADLEY OLSEN**

## PRELIMINARY STATEMENT

Plaintiff, Brock Lesnar ("Lesnar"), has moved the Court pursuant to Fed. R. Civ. P. 45(c)(3)(A) to quash or modify defendant World Wrestling Entertainment, Inc.'s ("WWE's") November 16, 2005, subpoena seeking to compel his counsel, David Bradley Olsen, Esq., an attorney and shareholder with the Minnesota law firm of Henson & Efron, P.A. ("Olsen"), to testify under oath at a deposition in the underlying litigation.[1] As explained below, the subpoena should be quashed because it: violates Minn. Stat. § 595.02, subd. 1(b); seeks to compel Olsen to testify as to information protected by the attorney-client and work product privileges and in violation of ethical rules regarding confidentiality; is being improperly used as a method by which to disqualify Olsen as trial counsel; and violates the Connecticut Court's order limiting the scope of discovery.

---

[1] Lesnar filed this action in the United States District Court for the District of Connecticut.

## JURISDICTION

Fed. R. Civ. P. 45(c)(3)(A) provides that the district court which issued a subpoena should determine a motion to quash or modify it. *Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C. 2001). Because the subpoena in question was issued under the authority of the United States District Court for the District of Minnesota, this Court has jurisdiction to hear and decide a motion to quash or modify. A court must quash or modify a subpoena if it "requires disclosure of privilege or other protected matter." Fed. R. Civ. P. 45(c)(3)(A).

## FACTUAL BACKGROUND

On February 4, 2005, Lesnar, a Minnesota citizen and resident, filed this action against WWE in the United States District Court for the District of Connecticut (the "Connecticut Court"), seeking a declaration pursuant to 28 U.S.C. §§ 2201 *et seq.* that a non-competition agreement (the "Non-Competition Agreement") which purports to restrict his ability to work in or be associated with the businesses of "professional wrestling," "ultimate fighting" and/or "sports entertainment," in any capacity whatsoever, through June 30, 2010, is void and unenforceable as a matter of law, because the purported restrictions on competition are not reasonably tailored to "fairly" protect WWE's legitimate business interests, impose an excessive and unreasonable restraint on Lesnar, and are otherwise overly broad, oppressive, unfair and inequitable. (See Complaint in *Lesnar v. World Wrestling Entertainment, Inc.*, Civil File No. 3: 05 CV 221 (CFD), United States District Court for the District of Connecticut, (the "Underlying Litigation") Electronic Case Filing Document Number 1; Olsen Aff., Ex. A).[2] After asking for and receiving an extension of time in which to respond to Lesnar's Complaint, on March 31,

---

[2] Copies of documents printed from the Connecticut Court's Electronic Case Filing System and referenced in this Memorandum as "CT ECF Doc. No. __" are attached to the Affidavit of David Bradley Olsen submitted herewith as Exhibits A - F.

2005, WWE filed its Answer, and counterclaimed for a declaration that the Non-Competition Agreement is enforceable and for damages resulting from its alleged breach. (CT ECF Doc. No. 6; Olsen Aff., Ex. B).

On May 18, 2005, before any discovery was taken, Lesnar moved the Connecticut Court pursuant to Fed. R. Civ. P. 56(c) for entry of summary judgment in his favor. (CT ECF Doc. No. 16; Olsen Aff., Ex. C, Summary Judgment Memorandum). The sole issue raised by Lesnar's summary judgment motion is whether the Non-Competition Agreement, as written, is enforceable under Connecticut law. (*Id.*). The rationale for filing the motion was clear: if the Court rules the Non-Competition Agreement to be unenforceable, there is nothing else to decide, and this litigation can be quickly and economically concluded. (Olsen Aff. Par. 5). WWE nevertheless sought leave to conduct discovery prior to responding. (CT ECF Doc. No. 18; Olsen Aff., Ex. D). The Court granted WWE's request, in part, permitting WWE to take a maximum of three depositions, but expressly limited the scope of discovery to issues raised in the summary judgment motion. (CT ECF Doc. No. 22; Olsen Aff., Ex. E).

Lesnar's primary attorneys are, and have since 2000 been David Bradley Olsen and the Minneapolis, Minnesota law firm of Henson & Efron, P.A., in which Olsen is a shareholder. (Olsen Aff., Par. 1, 8). More specifically, Olsen and his firm have been Lesnar's counsel from the inception of his dispute with WWE, and Olsen has engaged in pre-suit settlement dialogue with WWE's in-house counsel, drafted pleadings and motions, and actively participated with local Connecticut counsel in developing litigation strategy for the Underlying Litigation. (Olsen Aff. Par. 9). Because the contract in dispute contained a forum selection clause, however, the Underlying Litigation was filed in Connecticut, and Lesnar retained as local counsel Scott S. Centrella and the Stamford, Connecticut law firm of Diserio Martin O'Connor & Castiglioni,

LLP. (Olsen Aff., Par. 9). As the only attorney admitted to practice in Connecticut, Centrella has signed pleadings and other documents filed with the Connecticut Court, and has made the few routine court appearances that have so far been necessary. (Olsen Aff., Par. 9).

Olsen has not, to date, sought admission to appear *pro hac vice* in the Underlying Litigation because: (a) it was anticipated that the litigation would be fully resolved on the May 2005 Motion for Summary Judgment (to which WWE has yet to respond); (b) no trial has yet been scheduled; (c) Lesnar has not taken any discovery; and (d) local counsel in Connecticut is fully capable of handling motion and other proceedings prior to trial. (Olsen Aff., Par. 10). In the event that Lesnar does not prevail on the pending motion for summary judgment, and a trial is scheduled, Olsen anticipates that he will seek admission to appear *pro hac vice* in the Connecticut Court as trial counsel. (Olsen Aff. Par. 11).

Taking advantage of the Connecticut Court's Order permitting limited discovery, on November 16, 2005, WWE served Olsen with a subpoena, under the authority of this Court, purporting to compel his attendance and testimony at a deposition scheduled for November 30, 2005. (Olsen Aff., Par. 12 and Ex. F). By agreement between WWE's counsel, and Lesnar's Connecticut counsel, the deposition has been continued to December 20, 2005. (Olsen Aff., Par. 13).

## ARGUMENT AND AUTHORITY

A.  **WWE's Subpoena Should Be Quashed Because it Violates Minn. Stat. § 595.02, Subd. 1(b) and Seeks to Compel Olsen to Testify as to Information Protected by the Attorney-Client and Work Product Privileges and In Violation of Ethical Rules Regarding Confidentiality.**

Under Minnesota law, which governs the attorney-client relationship between Olsen and Lesnar, "[a]n attorney cannot, without the consent of the attorney's client, be examined as to any communication made by the client to the attorney or the attorney's advice given thereon in the

- 4 -

course of professional duty . . . [.]" Minn. Stat. §595.02, subd. 1(b) (2002). Minnesota has also adopted a common law privilege ". . . (1) Where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *Brown v. St. Paul City Ry. Co.*, 241 Minn. 15, 33, 62 N.W.2d 688, 700 (1954) (citing 2 Wigmore, Evidence s 229 (3d ed.)). Additionally, Minn. R. Prof. Conduct 1.6 imposes upon Olsen an ethical obligation to not "knowingly reveal information relating to the representation of the client."

As explained above, Olsen has from the inception of the underlying dispute been Lesnar's counsel, and has actively participated in the Underlying Litigation. Consequently, by statute, WWE is absolutely prohibited from examining Olsen as to any communications made by Lesnar, or any advice given thereon; and WWE is prohibited by the common law attorney-client privilege from examining Olsen with regard to all communications between he and Lesnar made for the purpose of obtaining or providing "legal advice of any kind" -- not just advice given in anticipation of litigation. Olsen, for his part, is similarly prohibited not only by his ethical obligations from revealing confidential client communications or information, but is also restricted by the common law attorney work-product privilege, which has been codified in the federal courts by Fed. R. Civ. P. 26(b)(3), and which prohibits a party from discovering any information as to the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed. R. Civ. P. 26(b)(3).

Moreover, because the sole issue in dispute in the Underlying Litigation is whether a Non-Competition Agreement, as written by WWE, is enforceable, and because the scope of

permissible discovery is limited to that single issue, there is virtually no non-privileged, relevant or admissible testimony that Olsen could provide, and no proper purpose for requiring him to submit to an examination under oath. But, even as to Olsen's communications with third parties, the facts of which are not privileged, he could without violating any privilege or ethical prohibitions confirm only that such communications occurred, and that what was communicated was communicated. Olsen could not, however, permissibly testify "why" he chose to say what he said, because that would force him to reveal client confidences and his own mental thoughts, impressions, opinions, conclusions and strategies; nor could Olsen permissibly testify regarding any communications he had with Lesnar regarding the third-party communications, because that would require him to reveal, directly or indirectly, client confidences. Similarly, even if the purpose of WWE's subpoena is not to invade the attorney-client and work product privileges, but merely to have Olsen confirm that he authored letters or documents, WWE is unable to show that it cannot easily obtain the content of Olsen's third party communications on behalf of Lesnar from other sources.

For example, WWE has already deposed Lesnar in the Underlying Litigation, and has examined him about all of the letters and e-mails Olsen wrote to third parties on Lesnar's behalf. There is no dispute that Olsen wrote letters to Lesnar's potential employers, or that the letters say what they say. As for communications between Olsen and WWE's in house-counsel prior to the commencement of this litigation, the result is the same. WWE already knows what was communicated (all of which were made at a time when litigation seemed likely if an agreement could not be reached, and most of which were made in the context of settlement negotiations), WWE has copies of all of the written correspondence, and WWE can ask its own employees anything it wants, without the need for court-authorized discovery procedures.

Accordingly, because WWE's subpoena: (a) was issued in violation of Minn. Stat. §595.02, subd. 1(b) which makes it unlawful to examine an attorney, without the consent of the attorney's client, "as to any communication made by the client to the attorney or the attorney's advice given thereon in the course of professional duty"; (b) clearly seeks information protected by the attorney-client and work product privileges; (c) would require Olsen to violate his ethical obligations under Minn. R. Prof. Conduct 1.6; and (d) seeks otherwise irrelevant and inadmissible information, WWE's subpoena should be quashed.

**B.   WWE's Subpoena Should be Quashed Because it Was Issued for the Improper Purpose of Disqualifying Olsen as Trial Counsel.**

As explained above, there is no proper purpose for compelling Olsen to testify in this matter, because nearly all of the information he could possibly provide is protected from disclosure by applicable privileges, and what other information he may possess is entirely irrelevant to the single issue before the court and is otherwise readily available from other sources. WWE may, however, have another purpose in mind, because a party that plans on calling an opposing party's attorney as a witness may make a motion to disqualify the attorney. *Landmark Dev. Group v. JEG Holdings, Inc.*, 185 F.R.D. 126, 127 (D. Conn. 1999).

It is evident that WWE's strategy is to turn Olsen into a "witness" in this case, and then use that status as a springboard for a motion to disqualify him as trial counsel. Use of the discovery rules to set up an opposing counsel for disqualification is not, however, a proper purpose under the discovery rules, and for that independent reason WWE's subpoena must be quashed. See Fed. R. Civ. P. 26(g) (attorneys must certify that all discovery requests are "not interposed for any improper purpose").

**C.     The Subpoena Should be Quashed Because it is Beyond the Scope of the Limited Discovery Authorized by the Connecticut Court.**

By the terms of the Connecticut Court's June 16, 2005 Order (ECF Doc. No. 22; Olsen Aff., Ex. E), WWE's discovery is limited to issues raised by Lesnar's summary judgment motion. The only issue raised in the summary judgment motion is whether the Non-Competition Agreement, as written, is "void and unenforceable as a matter of law." Given the limited scope of discovery, WWE would not have any legitimate purpose for taking Olsen's deposition, even if he were not Lesnar's attorney, because there is simply nothing Olsen could add that has any relevance to the summary judgment motion.

Other than information regarding Olsen's preparation for this case (clearly protected by the attorney-client privilege and the work-product doctrine), WWE may be intending to inquire of Olsen regarding communications with WWE in-house counsel prior to commencement of litigation (settlement discussions), or Lesnar's communications and agreements with third parties who had the potential to employ him. But settlement discussions are not admissible under Fed. R. Evid. 408 ("Evidence of conduct or statements made in compromise negotiations is likewise not admissible"), and any third-party communications with Lesnar's potential employers would potentially be relevant only to the question of whether Lesnar has breached the Non-Competition Agreement -- a question which is not before the Court.  Consequently, whether Lesnar communicated with, or worked for any person or entity in violation of the Non-Competition Agreement is well beyond the limited scope of discovery in the Underlying Litigation.

In fact, it literally strains the imagination as to what WWE could possibly ask Olsen that would lead to the discovery of any relevant or admissible evidence on the question of whether an agreement drafted by WWE's counsel is reasonably tailored to "fairly" protect WWE's legitimate business interests, imposes an excessive and unreasonable restraint on Lesnar, or is

otherwise overly broad, oppressive, unfair and inequitable. The Agreement is before the Court, and Lesnar has argued in his summary judgment motion that, as written, it is not enforceable. Lesnar's arguments have been made and they are of record. Olsen cannot be asked now, as a witness, to further explain the arguments he made as an attorney and advocate, because he could not do so without revealing his and his Connecticut co-counsel's strategies, theories, conclusions or mental impressions. See Fed. R. Civ. P. 26(b)(3) ("[T]he court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."). Accordingly, for the independent reason that any non-privileged or otherwise non-protected information WWE may seek to learn from Olsen is either readily available from other sources or is well beyond the limited discovery WWE is permitted to take, WWE's deposition subpoena to Olsen should be quashed.

**D.  Plaintiff Should be Awarded Reasonable Attorneys' Fees.**

The Federal Rules of Civil Procedure, R. 45(c)(1), imposes a duty on the party responsible for issuing the subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." Fed. R. Civ. P. 45(c)(1). The court on behalf of which issued the subpoena must enforce this duty and, when finding the party in breach of the duty, impose appropriate sanctions, including reasonable attorneys' fees. *Id.* WWE violated this duty in the instant case. The subpoena it issued imposes an undue burden on Olsen in that it seeks to compel Olsen to testify as to information protected by the attorney-client and work product privilege. The subpoena seeks to have Olsen violate his ethical obligations to his client regarding confidentiality. It also is being used as a tool to disqualify Olsen as trial counsel and gather information outside the scope of discovery. For all these reasons, WWE violated its duty

not to impose an undue burden on the subpoenaed party, and the Court should award Plaintiff reasonable attorneys' fees.

## CONCLUSION

The subpoena WWE issued to Olsen under the authority of this Court: violates Minn. Stat. § 595.02, subd. 1(b); seeks to compel Olsen to testify as to information protected by the attorney-client and work product privileges and in violation of ethical rules regarding confidentiality; is being improperly used as a method by which to disqualify Olsen as trial counsel; and violates the Connecticut Court's order limiting the scope of discovery. For these, and all of the foregoing reasons, the Court should enter its Order pursuant to Fed. R. Civ. P. 45(c) quashing WWE's subpoena, or otherwise modifying the subpoena consistent with the governing law, and awarding reasonable attorneys' fees to Plaintiff.

HENSON & EFRON, P.A.

Dated: December 15, 2005

By _____
Scott A. Neilson, 239951
Wesley T. Graham, 034574X
220 South Sixth Street, Suite 1800
Minneapolis, Minnesota 55402-4503
Telephone: 612-339-2500
Fax: 612-339-6364
E-mail: sneilson@hensonefron.com

and

Scott S. Centrella
Diserio Martin O'Connor & Castiglioni LLP
One Atlantic Street
Stamford, CT 06901-2402
Tel: 203-358-0800
Fax: 203-348-2321
E-mail: scentrella@dmoc.com
Fed Bar No. ct05809
Attorneys for Plaintiff, Brock Lesnar

270299.DOC